```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

RAHAD ROSS, 03-B-1779,

        Petitioner,

        -v-                                  09-CV-0631(MAT)
                                                    **ORDER**
ROBERT KIRKPATRICK,

        Respondent.
_____

**I.   Introduction**

*Pro se* petitioner Rahad Ross ("petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Supreme Court of Murder in the Second Degree (N.Y. Penal § 125.25(1)) and Assault in the Second Degree (§ 120.05(2)) following a jury trial before Justice David D. Egan. Petitioner was sentenced to consecutive sentences totaling thirty-two years to life imprisonment.

**II.  Factual Background and Procedural History**

On the night of September 25, 2002, petitioner shot Phillip Gaylord ("Gaylord") and Kevin Williams ("Williams") on Aebersold Street in the City of Rochester. Petitioner fired approximately five shots, striking Gaylord four times and Williams once as the men were walking down Aebersold toward Portland Avenue. T. 264-265, 267, 334, 337, 426.[1] Gaylord died as a result of his injuries and

---

[1] Citations to "T.__" refer to pages of the trial transcript; citations to "S.__" refer to the sentencing transcript.

Williams survived, suffering a gunshot wound to his ankle. T. 337, 348, 426, 432.

Rochester Police Officer James Reed responded to the scene of the shooting and found Gaylord laying on the sidewalk, unresponsive. T. 214-215, 220.

Eyewitness Sherry Melcer ("Melcer") had been sitting on her front steps outside 74 Aebersold Street when petitioner shot Gaylord and Williams. T. 265. Melcer testified that she observed petitioner emerge from a vacant lot next to her house wearing all black and a do-rag on his head. T. 265-266, 269, 281. Petitioner then walked to the sidewalk, raised his hand and fired five or six shots toward the direction of Portland Avenue. T. 265-267, 282, 285. Melcer then saw Gaylord fall to the ground. T. 266. Petitioner turned around and ran back through "the cut". T 265. Melcer called 911 to report the shooting, which she viewed from approximately twenty feet away. T. 242-245, 267, 288, 419-420. She testified that after she called 911, she saw Gaylord lying face-down on the sidewalk with "a lot of blood" and "gasping for air." T. 270, 299.

Melcer also testified that she had a prior criminal history, with her last arrest occurring about five years prior. She also had a history of drug and alcohol abuse, and was consuming alcohol the night of the shooting. T. 270-271, 297, 302-304. Despite her alcohol consumption that day, Melcer testified that she "knew what was going on" and was able to answer the questions posed by the 911

operator. T. 268. According to Melcer, she had known petitioner for approximately two years because he sold drugs in the Aebersold neighborhood where she lived. T. 262-263. A year before the shooting, Melcer had confronted petitioner about selling drugs outside of her house, although she acknowledged having a history of selling drugs herself. Hr'g Mins. dated 6/19/2002 at 33-44; T. 264, 328-30.

Williams, who survived the shooting, testified that at the time of the shooting, he was high on cocaine, and was looking to buy more from Gaylord. T. 336. He was walking down Aebersold Street toward Portland Avenue when he was shot in the ankle. According to Williams, he turned around and saw a man wearing what looked like a "black hoody" or "black mask", and the man continued to shoot at him and Gaylord. Williams stated that the shooter was approximately twenty feet away from him and four feet away from Gaylord, but Williams was unable to see the shooter's face. T. 334, 340, 343. As Williams was "hopping" away, he too saw the shooter run through the cut. T. 338. Although Williams did not identify the shooter, he testified that he knew petitioner because he was dating Williams' sister. T. 339. He also stated that petitioner was about the same height and build as the shooter. Id.

The prosecution's theory in this case was that Gaylord, a witness in a murder case against a man named Wiley McCloud, was killed by petitioner to prevent him from testifying at the upcoming

trial. Hr'g Mins. dated 6/19/2003 at 174; T. 387. Prior to being shot to death, Gaylord had identified Wiley McCloud as the individual who murdered Michael Graham. T. 391-394. According to the testimony of a Rochester Police investigator, Gaylord was the only person who could identify Wiley McCloud as Michael Graham's killer. T. 402.

The jury found petitioner guilty of second-degree intentional murder and second-degree assault. T. 645-646. He was subsequently sentenced to consecutive, aggregate terms of imprisonment of thirty-two years to life. S. 14.

Petitioner appealed his conviction to the Appellate Division, Fourth Department, on the sole ground that he was denied a fair trial due to the improper admission of evidence of petitioner's prior bad acts. The Fourth Department unanimously affirmed the judgment of conviction. People v. Ross, 43 A.D.3d 1434 (4th Dept. 2007), lv. denied, 9 N.Y.3d 1038 (2008). Petitioner also filed a motion for writ of *error coram nobis* challenging his appellate counsel's effectiveness, which was denied by the Fourth Department. People v. Ross, 63 A.D.3d 1670 (4th Dept. 2009), lv. denied, 13 N.Y.3d 862 (2009).

The instant petition for habeas corpus followed, alleging that the verdict was not supported by legally sufficient evidence and

that his trial and appellate counsel were ineffective.[2] Pet. ¶ 22(A)-(C). For the reasons that follow, the Court finds that petitioner is not entitled to the writ, and the petition is dismissed.

**III. Discussion**

    **A.    Standard of Review for Federal Habeas Corpus Petitions**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of

---

[2] Although petitioner makes three separate allegations in his habeas petition, it appears from the state court records submitted by respondent that petitioner challenged his trial counsel's effectiveness and the sufficiency of the evidence in light of a claim of ineffective assistance of appellate counsel in a petition for writ of *error coram nobis*. This is underscored by the fact that petitioner did not raise these claims independently either in a *pro se* supplemental brief on appeal or in a post-conviction motion pursuant to N.Y. Crim. Proc. L. § 440.10. Accordingly, the Court will address petitioner's claims as they were presented in his application for writ of *error coram nobis*.

materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091(2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Merits of the Petition: Ineffective Assistance of Appellate Counsel**

Petitioner contends that his appellate counsel was ineffective for failing to argue on appeal that: (1) the indictment was multiplicitous; (2) trial counsel was ineffective; and (3) the evidence was legally insufficient to support the conviction. Pet. ¶ 22 (B). Petitioner raised his claim of ineffective assistance of appellate counsel by way of an application for writ of *error coram nobis*, which was summarily denied by the Appellate Division, Fourth Department. People v. Ross, 63 A.D.3d 1670 (4th Dept. 2009), lv. denied, 13 N.Y.3d 862 (2009).

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for

7

his attorney's errors, "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688 (1984). A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)), cert. denied, 508 U.S. 912 (1993).

To establish ineffective assistance of appellate counsel for failure to raise specific issues, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous that could be made. Id. Rather, counsel may winnow out weaker arguments on appeal and focus on one or two key issues that present "the most promising issue for review." Jones v. Barnes, 463 U.S. 745, 751-53 (1983). A habeas petitioner must demonstrate that "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. To establish prejudice for failing to raise an issue on direct appeal, a petitioner must show that there was a reasonable probability that the claim would have been successful before the state's highest court. Claudio, 832 F.2d at 803.

First, there was no basis to raise a claim challenging the indictment as multiplicitous."An indictment is multiplicitous when it charges a single offense as an offense multiple times, in

separate counts, when, in law and fact, only one crime has been committed." United States v. Chacko, 69 F.3d 140, 145 (2d Cir. 1999) (footnote omitted). "This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." Id. (citing U.S. Const. amend. V; United States v. Dixon, 509 U.S. 688, 696 (1993) ("In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies.") (other citation omitted). Here, petitioner was charged with intentional murder, N.Y. Penal L. § 125.25(1), and depraved indifference murder, N.Y. Penal L. § 125.25(2), in the alternative. At the time of petitioner's trial, the practice of charging second-degree murder under alternative theories was permissible. See People v. Gallagher, 69 N.Y.2d 525, 529-530 (1987). Appellate counsel explained this in a letter to petitioner[3] dated April 23, 2007:

> People v. Payne [3 N.Y.3d 266 (2004)], and related cases are applicable where someone has been convicted of Depraved Indifference Murder where the facts clearly indicate an intentional act. *Two counts of murder can still be submitted to the jury in the alternative, however, and it is not error to do so.* Payne and related cases are inapplicable to convictions of intentional murder, such as yours.

---

[3] Petitioner apparently did not include his original letter(s) to appellate counsel in his *coram nobis* application.

<u>See</u> Pet'r Coram Nobis App., Ex. B (Appx. G).

In any event, even if the indictment did improperly charge both depraved indifference and intentional murder, there was no Double Jeopardy violation since petitioner was only convicted of one count of murder, the one charging him with an intentional killing. The jury did not consider the depraved indifference murder count. Accordingly, appellate counsel did not err in failing to include such a contention in petitioner's appellate brief. Appellate counsel cannot be found ineffective for omitting a claim which had no likelihood of success on appeal, and a petitioner cannot be prejudiced as a result of appellate counsel's failure to raise meritless claims. <u>See</u> <u>Mayo v. Henderson</u>, 13 F.3d at 534 ("To establish prejudice in the appellate context, a petitioner must demonstrate that there was a 'reasonable probability' that [his] claim would have been successful ...." (alteration in original)) (quoting <u>Claudio v. Scully</u>, 982 F.2d at 803).

For the same reason, petitioner's contention that "appellate counsel was ineffective for failing to raise a meritorious argument of ineffective assistance of trial counsel" also fails. <u>See</u> Pet'r Coram Nobis App. (Appx. G.), Pet. ¶ 22(A). From what the Court can discern from petitioner's papers, it appears that the only allegation made was that trial counsel was ineffective for failing to seek dismissal of the indictment on the ground that it was multiplicitous. Because there was no basis for trial counsel to do

so, as discussed above, trial counsel's alleged ineffectiveness does not support a claim of ineffective assistance of appellate counsel. Again, appellate counsel addressed this issue in a letter to petitioner, dated April 16, 2007: "There was no ineffective assistance of counsel issue presented by your case, and the strength of the issue presented is far more important than the number of issues." See Pet'r Coram Nobis App., Ex. A (Appx. G).

Finally, the Court rejects petitioner's contention that appellate counsel was ineffective for "ignor[ing] obvious meritorious issues of the law such as insufficiency of the evidence to support a finding of guilt beyond a reasonable doubt . . . ." Pet'r Coram Nobis App. (Appx. G); Pet. ¶ 22(C). "For a court to conclude . . . that a jury verdict is supported by sufficient evidence, the court must determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial . . . and as a matter of law satisfy the proof and burden requirements for every element of the crime charged." People v. Bleakley, 69 N.Y.2d 490, 495 (1987) (citation omitted); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979)("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.")

Here, one eyewitness (Melcer) observed the crime being committed and identified the shooter as a man she knew from the neighborhood. Likewise, the surviving victim (Williams) was acquainted with petitioner and acknowledged that his appearance was similar to the person that shot at the two men on Aebersold Street. The prosecution also introduced evidence that petitioner and Wiley McCloud had been close friends and that petitioner had a motive to eliminate Gaylord, the primary witness for the prosecution in Wiley McCloud's impending murder trial. Given the ample evidence against petitioner, it is not probable that a challenge to the sufficiency of the evidence would have been successful on appeal. Moreover, correspondence from appellate counsel to petitioner indicates that counsel selected the strongest issue on appeal (a state evidentiary issue) and argued it at length. See Appx. B & G.

To the extent that petitioner attempts to argue that the evidence "supports if any a conviction of depraved indifference," see Pet. ¶ 22(C), such a contention is unsupported by both the facts and the relevant case law. In People v. Suarez, 6 N.Y.3d 202 (2005), the New York Court of Appeals stated:

> [S]omeone who intends to cause serious physical injury does not commit depraved indifference murder because the intended victim dies. . . . Thus, one who acts with the conscious intent to cause serious injury, and who succeeds in doing so, [and the person thereafter dies] is guilty only of manslaughter in the first degree. Otherwise, every intentional manslaughter would also establish depraved indifference murder-a

> result plainly at odds with the discrete classifications set forth in the statute. Since a defendant who intends to injure or kill a particular person cannot generally be said to be "indifferent"-depravedly or otherwise-to the fate of that person, we underscore what we said in Payne: "a one-on-one shooting or knifing (or similar killing) can almost never qualify as depraved indifference murder."

6 N.Y.3d at 211-12. Here, the facts of petitioner's case clearly support a conviction of intentional, and not depraved indifference murder, and appellate counsel would have had no reason to raise such an argument before the Appellate Division.

In sum, petitioner has not demonstrated that his appellate counsel was ineffective. Appellate counsel affirmatively stated that the claims petitioner wanted to raise were without merit. Appellate counsel raised the one argument he believed had real merit, acknowledging "the importance of winnowing out weaker arguments." Barnes, 463 U.S. at 751-54. Such discretion is clearly afforded appellate counsel. Petitioner's ineffective assistance of appellate counsel claim should therefore be denied as the state court's decision was not contrary to or an unreasonable application of clearly established Federal law. See 28 U.S.C. § 2254(d)(1).

**IV. Conclusion**

For the reasons stated above, Rahad Ross' petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Petitioner has failed to make a "substantial showing of a denial of a constitutional right", 28 U.S.C. § 2253

(c)(2), the court declines the issue of certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   April 27, 2011
         Rochester, New York

14